UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN D. KETZNER,

          Plaintiff,          CIVIL NO: 08-10893

                                      DISTRICT JUDGE DAVID M. LAWSON
vs.                                  MAGISTRATE JUDGE STEVEN D. PEPE

FAELYN FELLHAUER and
BRIAN DOUGLAS

          Defendants.
                               /


## REPORT AND RECOMMENDATION

On March 4, 2008, Plaintiff commenced this action, seeking relief under 42 U.S.C. §§ 1983, 1985 and 1986 for violation of his civil rights. In his Complaint, Plaintiff alleges that, while incarcerated at the Gus Harrison Correctional Facility ("ARF"), Defendants ARF Nurse Faelyn Fellhauer and Brian Douglas conspired to retaliate against Plaintiff in violation of 42 U.S.C. § 1985(3).[1]

On June 4, 2008, Defendant Douglas filed a motion for summary judgment based on Plaintiff's failure to state a cognizable claim (Dkt. #11) to which Plaintiff responded on June 23, 2008 (Dkt. #12). All pre-trial matters were referred under 28 U.S.C. § 636(b) (Dkt. #5). For the

---

[1] Plaintiff referres to 42 U.S.C. §1983(5) in his complaint alleging a conspiracy to violate his civil rights. Because there is no 42 U.S.C. § 1983(5) statute but there is a 42 U.S.C. § 1985(3) relating to conspiracy to deprive an individual of his constitutional rights, it is assumed that Plaintiff made a clerical error when typing the statute and will for the purposes of this Report and Recommendation analyze the claim under 42 U.S.C. § 1985(3).

1

reasons stated below, it is **RECOMMENDED** that Defendant Douglas's motion for summary judgment be **GRANTED** and that the case against Defendant Douglas be dismissed.

## I. BACKGROUND

Plaintiff is currently an inmate at Gus Harrison Correctional Facility in Adrian, Michigan and was so at the time of the events giving rise to his complaint  Plaintiff alleges that on September 2, 2007,  he experienced vertigo, nausea, vomiting and heavy perspiration.  His cellmate sought the assistance of the cellblock guards, who in turn called health services. Defendant Nurse Fellhauer took Plaintiff in a wheelchair to a health services examination room. When they arrived at health services,  Plaintiff signed a blank Health Care Request form which contained a provision requiring the patient to pay a copayment for medical services rendered. Defendant Fellhauer  advised the Plaintiff that he suffered from the flu and  was dehydrated. Plaintiff disagreed with Defendant Fellhauer's diagnosis, arguing that he did not have the flu.  In response to Plaintiff's insistence that he did not suffer from the flu, Defendant Fellhauer took Plaintiff's temperature and blood pressure with the temperature being normal, within the 97 degree range.   Plaintiff continued to argue with Defendant Fellhauer to the point that she requested for a guard to remove Plaintiff from the examining room.

Plaintiff was given a medical detail for medical lay-in to be on a liquid diet until September 5, 2007.   Plaintiff continued to suffer from disorientation, vertigo, weakness and a severe headache for the next thirteen days.

On September 3, 2007, Plaintiff filed a grievance against Defendant Fellhauer.  On September 10, 2007, Plaintiff was interviewed by the ARF Nurse Supervisor regarding his grievance.  During the interview, Plaintiff noted that he had not seen a doctor as promised by

Defendant Fellhauer and as requested in his September 10 Health Care Request  The Nurse Supervisor arranged for him to see a doctor and a blood test was ordered.

On September 12, Plaintiff learned that Defendant Fellhauer had authorized a deduction from his prison account for a co-payment for the September 2, 2007 medical contact.  Plaintiff again contacted the Nurse Supervisor concerned that the charge was a retaliation tactic on the part of Defendant Fellhauer. This concern was forwarded to Defendant Douglas, who supported Defendant Fellhauer's actions and refused to overrule the co-payment.

Plaintiff alleges that his rights under 42 U.S.C. §§1985 and 1986 were violated because Defendant Douglas misapplied the MDOC co-payment policies and conspired with Defendant Fellhauer to retaliate against Plaintiff for constitutionally protected free speech.  Plaintiff further asserts that Defendant Douglas failed to prevent  Defendant Fellhauer's retaliation.

## II.    ANALYSIS

### A.    The Legal Standards

(1) <u>Legal Standard for Summary Judgment</u>

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon*

*v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Factual Analysis

(2) §1985(3) and §1986 Claims

Plaintiff alleges conspiracy claims under 42 U.S.C. §§1985(3) and 1986 against Defendant Douglas. Plaintiff claims that Defendant Douglas conspired with Defendant Fellhauer to charge Plaintiff an improper Health Services co-payment as retaliation for his constitutionally protected free speech regarding his medical concerns. To prevail on a claim under 42 U.S.C. §1985(3), Plaintiff "must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States."

4

*Smith v. Thornburg,* 136 F. 3d 1070, 1078 (6th Cir. 1998); *Johnson v. Hills & Dales General Hospital,* 40 F. 3d 837, 839 (6th Cir. 1994), *cert denied* 115 S. Ct. 1986 (1995). The claim requires facts demonstrating that the conspiracy was motivated by a class based animus, such as race. *Smith v. Thornburg,* 136 f. 3d at 1078.

Plaintiff does not contend, nor has he averred any facts demonstrating, that the alleged conspiracy was motivated by class-based animus. Plaintiff stated in his Response Brief to the Motion for Summary Judgment that "Defendant Douglas correctly characterizes the pleading requirements of §§1985(3) and 1986 and is correct that Plaintiff has not pled any racial or class-based invidiously discriminatory conduct" (Dkt. #12, pg. 3). Therefore, because Plaintiff does not claim any racially discriminatory or class-based discriminatory conduct nor does he put forth facts to find such, he cannot satisfy the requirements for a §1985(3) claim. Accordingly, it is recommended that the 42 U.S.C. §1985(3) claim against Defendant Douglas be dismissed.

Additionally, Plaintiff cannot satisfy a claim under 42 U.S.C. §1986 . "Section 1986 is designed to punish those who aid and abet violations of §1985. We find no violation of §1985. Accordingly, there can be no violation of §1986." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.,* 32 F. 3d 989 (6th Cir, 1994) quoting *Browder v. Tipton,* 630 F. 2d 1149, 1155 (6th Cir. 1980). Because 42 U.S.C. §1986 is premised on a violation of 42 U.S.C. §1985, there can be no violation of 42 U.S.C. §1986 without a violation of 42 U.S.C. §1985. *Seguin v. Sterling Heights,* 968 F. 2d 584, 590 (6th Cir. 1992). Plaintiff agrees with Defendant Douglas that the §1986 claim should not survive and seeks recovery under § 1983 (Dkt. #12, pg. 3).

(2) §1983 Claim

Plaintiff argues in his response that while his claims may not survive under §§1985(3) and 1986, Defendant Douglas is still liable for his part in the alleged conspiracy under §1983, even though this claim was not specifically pled against Defendant Douglas in claims three and four of the Complaint. As noted in footnote 1 above, Plaintiff's opening paragraph of his Complaint states this is an action under 42 U.S.C. §1983. In ¶ 44 of his complaint he argues that Defendants Douglas and Fellhauer retaliated against him violating his substantive due process right. He noted jurisdiction over § 1983 in ¶ 48 and ¶ 49. In ¶ 63 of Claim Three against Defendants Douglas and Fellhauer Plaintiff states that they violated his First Amendment rights by retaliation presented as a conspiracy claim. While the specific statutory basis could have been clearer in claims three and four, it is sufficient to give Defendant Douglas notice that this is a civil rights claim for retaliation under § 1983.[2] Accordingly, the Court will address the

---

[2] The 1938 Federal Rules of Civil Procedure liberalized earlier pleading requirements. Detailed fact pleading was no longer required given the liberal discovery rules. In addition, Fed. R. Civ. P. 8(a) eliminated the concept of "cause of action" (*see* Advisory Committee's 1955 Report Note to Rule 8(a)(2), quoted and discussed in Wright & Miller, *Federal Practice and Procedure Civil 2d* § 1201 & n. 11 (1969) and required only statement of a claim. While it is commonplace to plead every legal "count" or cause of action justifying an asserted claim, this is not necessary, and indeed has been criticized.

In *Gins v. Mauser Plumbing Supply Co.*, 148 F.2d 974 (2d Cir. 1945),Chief Judge Charles Clark (Reporter for the Supreme Court's Advisory Committee to draft the federal rules), joined by Judges Learned and Augustus Hand, were confronted with a complaint alleging five separate "causes of action." Judge Clark noted:
> As a matter of fact, all these separate causes were only the statement of the same claim in the light of different legal theories. Such repetitious statement of legal claims, originally required by the exigencies of common-law pleading, is too firmly grounded in our history to be outlawed even though it has often been criticized by code pleaders. . . .
> > 3/Stephen, *Pleading*, 458-565, (Williston's Ed. 1895); Shipman, *Common-Law Pleading*, 203-206, (3d Ed. Ballantine 1923).
>
> A simple statement in sequence of the events which have transpired, coupled with a direct claim by way of demand for judgment of what the plaintiff expects and

retaliation raised claim under a § 1983 analysis.

To support a claim under 42 U.S.C. §1983 Plaintiff "must satisfy two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law." *Boykin v. Van Buren Township,* 479 F. 3d 444, 451 (6th Cir. 2007) *quoting Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir.2003).

PD 03.04.101requires a $5 co-pay for certain non-emergency medical care not initiated by a qualified health professional. [3] Initially reviewing Plaintiff's response, the core of the

---

> hopes to recover, is a measure of clarity and safety; and even the demand for judgment loses its restrictive nature when the parties are at issue, for particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not.

148 F.2d at 976.

A complaint will withstand a motion to dismiss if it appears that plaintiff is entitled to any relief, even if the relief specifically sought and the legal theory asserted are not appropriate. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 1219, 191 & n. 12 (2d ed. 1990). Professor Wright notes that a good lawyer needs a legal theory to draft a complaint and is permitted to state it in the complaint:

> The real issue, of course, is not whether legal theories may be pleaded but whether the original theory may be discarded and recovery had on some other theory. The federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits. Undoubtedly cases can be imagined in which an alteration in legal theory would work to the prejudice of the opposing party in a way that cannot be rectified by an appropriate court order. But such cases are very rare and the court always can invoke its discretion under Rule 15 to prevent a change in the theory of the action. In the vast majority of cases, any temporary prejudice from a shift in theory can be overcome by permitting additional time for discovery or by granting a continuance if the case has reached trial.

*Federal Practice and Procedure* § 1219 at 192-95 (footnotes omitted).

[3] PD 03.04.101, "Prisoner Health Care Copayment" (eff 12/08/2003)

### GENERAL INFORMATION

D. A prisoner may report an illness or other health problem to a qualified health professional and receive diagnosis and treatment, as outline in PD 03.04.100 "Health Services". However, the prisoner shall be charged a $5.00 copayment for each medical, dental and optometric visit, except as set forth in paragraphs G through I of this policy.

### APPLICATION

G. Prisoners shall not be required to pay a copayment for health care visits initiated by a QHP6* or required by the Department, including transfer assessments, intake and annual health screenings, and required follow-up care.

---

[FN] A "QHP" is a "qualified health professional" and includes a physician, a physician assistant, registered nurse, nurse practitioner, dentist, dental hygienist, or other health care professional licensed by the State of Michigan or certified to practice within the scope of his or her training.

---

H. A health care visit initiated by a prisoner shall be subject to a copayment except if the visit:
    1. Is for a work-related injury documented by the prisoner's work supervisor.
    2. Is for the prisoner to be tested for Human Immunodeficiency Virus (HIV), sexually transmitted diseases, infestations, or reportable communicable diseases.
    3. Is for an evaluation, consultation, or treatment of a mental health need.
    4. Results in the prisoner receiving, or being referred to receive, emergency medical care within one hour. If the emergency medical care is due to an intentional self-inflicted injury, the prisoner shall be responsible for the full cost of the medical care provided as set forth in Paragraph I.

### Self Inflicted Injuries

I. A prisoner who intentionally injures himself/herself and receives emergency medical care for that injury shall be charged the full cost of the emergency and subsequent medical care provided as a result of the injury. However, a prisoner will not be responsible for the cost of emergency medical care for self-inflicted injuries if a qualified mental health professional determines the prisoner is mentally ill, and either lacks substantial capacity to know right from wrong or is incapable of conforming his/her conduct to Department rules. The cost of medical care does not include ancillary services such as transportation and custody costs.

### ASSESSMENT OF CHARGES

J. A prisoner shall use the Prisoner Request for Health Care Services form (CHR-549) to request a health care visit. Staff shall review the form with the prisoner if the prisoner is unable to read the form or has questions regarding it. At

complaint is a dispute over a billing of this $5 co-payment to his prison account by Defendant Fellhauer later upheld by Defendant Douglas. To the extent this is a procedural due process claim over the billing of the $5 co-pay to Plaintiff's account, *Parratt v. Taylor,* 451 U.S. 527, 537-43 (1981), *overruled in part by Daniels v. Williams,* 474 U.S. 327 (1986), it requires Plaintiff to plead and prove that there is no adequate post-deprivation state remedy for such billing errors allegedly done in violation of the MDOC policy directives. Plaintiff has not alleged or demonstrated any inadequate remedy for such co-pay billing disputes.

In his response to Defendant Douglas' motion, Plaintiff claims that Defendants deprived him of a constitutional right by denying a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. Plaintiff mistakenly believes that MDOC's policy directives and operating procedures create such a liberty interest. In *Bazzetta v. McGinnis,* 430 F. 3d 795, 801 (6th Cir. 2005), the court noted that prisoners retain a liberty interest "that emanates from two discrete sources: (1) state law can establish a protectable liberty interest, or (2) the Constitution can create a liberty interest when a condition on restraint is so egregious as to implicate the Due Process Clause itself." *citing Wilkinson v. Austin,* 125 S. Ct. 2384, 2393 (2005).

Plaintiff misinterprets two Supreme Court cases, arguing that they support his claim that the MDOC policies and operating procedures create a liberty interest. In *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 12 (1979), Plaintiff claims that the Supreme Court held that regulations, policy directives and operating procedures created a liberty

---

    the conclusion of the visit, health care staff shall determine if the prisoner is to be charged a fee for the visit in accordance with this policy and shall complete the Prisoner Request for Health Care Services form. A copy of the form shall be sent to the Business Office if a fee will be charged for the visit.

interest. Despite Plaintiff's characterization, *Greenholtz* did not involve regulations, policy directives or operating procedures, but rather, a state statute. It was the state statute in *Greenholtz* which created a liberty interest. In *Greenholtz,* the Court noted that a state statute could create a liberty interest that is protected by due process guarantees. *Id.* at 12. The Court noted that the parole statute involved in *Greenholtz* satisfied the requirements of the Due Process Clause because inmates were given the opportunity to speak on their behalf through a series of hearings built into the statute. *Id.* at 12-15. In contrast, this case involves the implementation of a policy directive within a correctional facility or system. Plaintiff fails to identify any state statute that creates a liberty interest in the MDOC's policy of requiring a co-payment for nonemergency medical services.

*Sandin v. Conner,* 515 U.S. 472, 484 (1995), held that in a prison context a state may create a constitutionally-cognizable liberty interest by operation of a law or regulation establishing freedom from restraint or other burden which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." It cannot be said that a prison directive requiring that inmates make a $5 co-payments for certain non-emergency medical visits "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Plaintiff cites *Vitek v. Jones,* 445 U.S. 480, 488-490 (1980), in which a prisoner brought a suit contesting the constitutionality of a statute permitting the transfer of a prisoner to a mental hospital if a physician or psychiatrist found the prisoner suffered from a mental disease or defect. In *Vitek*, the Supreme Court found a liberty interest because "not being involuntarily committed to a mental hospital is implicit in the Due Process Clause, thus triggering constitutional

procedural protections." *Bazzetta,* 430 F. 3d at 840, *citing Vitek,* 445 U.S. 489-490. Yet, Plaintiff's $5 co-pay cannot meet this standard, because for a liberty interest to spring from the Due Process Clause the "correctional officials [must] impose restraints upon the prisoner which exceed the prisoner's sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Bazzetta,* 430 F. 3d at 839-840 *citing Sandin v. Conner,* 115 S. Ct. 2293, 2300 (1995). Again a $5 co-pay charge for a medical visit does not satisfy this standard. Because Plaintiff cannot demonstrate a procedural due process constitutional violation, Defendant Douglas is not liable under §1983.

The second claim is a substantive due process claim that Defendant Douglas retaliated against him in not overturning the $5 co-pay assessment initially made by Defendant Fellhauer. Plaintiff alleges that Defendant Fellhauer imposed the $5 co-pay in retaliation for Plaintiff exercising his First Amendment speech rights when he complained about her inadequate medical diagnosis and her inadequate response to his need for medical care. When plaintiff wrote a kite to the Nurse Supervisor complaining of this $5 co-pay assessment by Defendant nurse Fellhauer and claiming it was in retaliation, the Nurse Supervisor forwarded the kite to Health Unit Manager Douglas. Plaintiff alleges that Defendant Douglas ratified her nurse Health Unit Manager's retaliatory assessment when he did not prevent the Business Office from charging the $5.00 co-pay to Plaintiff.

(3) <u>Absolute Immunity for Official Caoacity</u>

Defendant Douglas was sued in his official capacity as an employee of the State is also entitled to Eleventh Amendment immunity. The Eleventh Amendment bars a suit against the State or one of its agencies in federal court unless the state has given express consent, regardless

11

of relief sought. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1989); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978). The State of Michigan has not consented to civil rights suits in federal courts. *See Abick v. Michigan,* 803 F. 3d 874, 877 (6th Cir. 1986). There are three exceptions to Eleventh Amendment immunity:

> "First, a state may waive the protection of the Amendment by consenting to the suit . . . the second exception to the Eleventh Amendment bar is that Congress, under certain provisions of the Constitution, may abrogate the sovereign immunity of the states through statute . . . under the third exception, a federal court may enjoin a "state official" from violating federal law."
> *Lawson v. Shelby County, TN,* 211 F. 3d 331, 33-335 (6th Cir. 2000) (citations omitted)

As was discussed above, the State of Michigan has not waived its Eleventh Amendment immunity. Additionally, in *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989), the Supreme Court found that "Congress, in passing §1983, had no intention to disturb the States' Eleventh Amendment immunity . . ." the court also reiterated that "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office . . . As such, it is no different from a suit against the state itself." *Id.* at 66, 71 (citations omitted). Moreover, the third exception does not apply here because it only applies when the remedy sought is injunctive relief, whereas here Plaintiff seeks monetary damages (Dkt. #1, pg. 16). *Lawson,* 211 F. 3d at 335. Therefore, because Defendant Douglas is an employee of the state, and none of the Eleventh Amendment immunity exceptions apply, even if there were a constitutional violation claimed by Plaintiff, Defendant Douglas cannot be sued in his official capacity.

(3) <u>Qualified Immunity from Damages Claims in Individual Capacity</u>

Finally, Plaintiff's retaliation claims against Defendant Douglas are also barred by

qualified immunity. Government officials who perform discretionary functions are generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995); *Thomas v. Whalen*, 51 F.3d 1285, 1289 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 518 (1995); *Pray v. Sandusky*, 49 F.3d 1154, 1157-58 (6th Cir. 1995). Qualified immunity is an affirmative defense and the plaintiff need not anticipate it in the complaint. *Gomez v. Toledo,* 446 U.S. 635 (1980). "Since qualified immunity is a defense, the burden of pleading it rests with the defendant." *Id.* at 640. *See also Veney v. Hogan,* 70 F.3d 917, 921-22 & n. 5 (6th Cir. 1995). While a plaintiff may use a generalized "notice" form of complaint, once a defense of qualified immunity is asserted, the plaintiff must respond with "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Id.* at 922. The Sixth Circuit has held that if a defendant raises a qualified immunity defense, the plaintiff bears the burden of showing that the constitutional right alleged to have been violated was clearly established at the time of the alleged violation. *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1174 (6th Cir. 1988); *Dominique v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987). "[I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals, or itself." *Seiter*, 858 F.2d at 1177.

Qualified immunity seeks to ensure that defendants "reasonably can anticipate when their conduct may give rise to liability," *Davis v. Scherer,* 468 U.S. 183, 195 (1984), by imposing

13

liability only if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635 640 (1987). "[I]n effect the qualified immunity test is simply the adaption of the fair warning standard to give officials (and, ultimately, governments) the same protections from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes." *United States v. Lanier,* 117 S. Ct. 1219, 1227 (1997). Splits of authority among the circuits is "a circumstance [that] may be taken into account in deciding whether the warning is fair enough" but it is not a categorical bar to a finding of liability. *Id.* To be "clearly established" there need not be prior relevant case law "on all fours" or deciding "the very action in question." *Anderson,* 483 U.S. at 640. *See also McBride v. Village of Michiana,* 100 F.3d 457, 461 (6th Cir. 1996). *McCloud v. Testa,* 97 F.3d 1536, 1557 (6th Cir. 1996), noted that if courts required prior precedent on the specific facts at issue in the pending case, "qualified immunity would be converted into a nearly absolute barrier to recovering damages against an individual government actor. . . ."

The Supreme Court in *Siegert v. Gilley*, 500 U.S. 226, 111 S. Ct. 1789 (1991), set out the "analytical structure under which a claim of qualified immunity should be addressed." The Court is to determine whether the plaintiff has alleged the violation of a clearly established constitutional right. This is a purely legal question. It involves two steps. The first step is to determine whether the alleged conduct violates any constitutionally protected right at all. The second step is to determine whether that constitutional right was clearly established at the time of the defendant's action or failure to act. If the answer to the first question is in the negative, the Court need not consider the second question because if no constitutional right exists, no such

14

right would have been clearly established.

The question whether an official is protected by qualified immunity does not turn on the subjective good faith of the defendants, but rather turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Harlow*, 457 U.S. at 818-19; *Mackay v. Dyke*, 29 F.3d 1086, 1094 (6th Cir. 1994). Qualified immunity is appropriate either on the basis that the right allegedly violated was not at the time "clearly established," or if "clearly established," was one that a "reasonable" person in the defendant's position could have failed to appreciate would be violated by his conduct. *Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995) (quoting *Anderson*, 483 U.S. at 640). Thus, even where the general rule is clearly established, it may be open to question whether the defendant's specific action comes withing the scope of the general rule. Officials may be entitled to qualified immunity when their decision is reasonable, even though mistaken, in determining that their action did not fall within the scope of a clearly established general rule. *Id*. The Supreme Court urges that the lower courts follow the *Siegert* sequence and first determine whether plaintiff has alleged a constitutional deprivation at all before considering -- or too readily determining -- that it was not clearly established.[4]

Defendant Douglas acted in his individual capacity as a state employee who performed a discretionary function in his review of the $5 co-pay assessment. To establish that Defendant Douglas did this in retaliation for Plaintiff's exercise of his First Amendment rights, Plaintiff

---

[4] On Plaintiff's procedural due process claims, it was determined in the prior section that Plaintiff had not stated a constitutional deprivation on these claims. Thus Defendant Douglas would be entitled to qualified immunity protection on that claim under the first prong of the *Siegert* analysis.

15

must prove that: 1) the Plaintiff engaged in protected conduct; 2) an adverse action was taken against the Plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by the Plaintiff's protected conduct. *Siggers-El v. Barlow,* 412 F.3d 693, 699 (6th Cir. 2005); *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-94 (6th Cir. 1999) (*en banc*).

For purposes of this motion, it will be accepted that an inmate has a First Amendment protected right to complain to a health care provider about what he believes is an incorrect diagnosis, and to raise an issue about the quality of care he is receiving or lack thereof..

The second element is intensely fact-specific. Unless the adverse action is truly inconsequential, this element should be considered facially met and submitted to the jury for final determination. *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (theft of property from cell including legal papers and medical dietary supplements for AIDS prisoner constitutes adverse action), *later appeal*, 404 F.3d 997 (2005). Yet here it is questionable that a $5 co-pay would *deter* an inmate of ordinary firmness from complaining about a mis-diagnosis or about deficient medical care. Yet, *Bell v. Johnson* indicates such questions, even if close, should be submitted to a jury. *Compare Harbin-Bey v. Rutter*, 420 F.3d 571, 579-80 (6th Cir. 2005) (Where an inmate did not lose any privileges but was simply not permitted to send mail with gang-related subject matter, an inmate of ordinary firmness would not be deterred from filing grievances.)

There is also a close question whether a jury could find causation on these facts, i.e. that Defendant Douglas upheld the $5 co-pay because of Plaintiff's complaining to nurse Fellhauer

16

about his diagnosis and care and not because he thought the co-pay was properly assessed. Nonetheless, for purposes of the first part of the *Siegert* sequence is determined that Plaintiff has stated a constitutional claim of retaliation against nurse Fellhauer's supervisor, Health Unit Manager Douglas.

Turning to the second part of the *Siegert* sequence , given the close and questionable nature of fact issues 2.) and 3.) of the *Thaddeus-X* retaliation standard, it is inconceivable that a Health Unit Manager in Defendant Douglas' position would have recognized that in upholding the $5 co-pay assessment against Plaintiff, he was ratifying and became responsible for retaliation against Plaintiff for his having complained about the health care he received from nurse Fellhauer. Thus, Defendant Douglas is entitled to qualified immunity under the second part of the *Siegert* and his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Defendant Douglas is thus entitled to qualified immunity on Plaintiff's retaliation claim against him.

### III.  RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendant Douglas's motion for summary judgment be **GRANTED**, and the case against Defendant Douglas be dismissed with prejudice. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others

with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.


Dated: October 15, 2008                                s/ Steven D. Pepe
Ann Arbor, MI                                          United States Magistrate Judge



Certificate of Service

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on 10/15/08 .

                                                       s/Jermaine Creary
                                                       Deputy Clerk